IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CLIFTON G. VALENTINE,

        Plaintiff,

v.                      //    CIVIL ACTION NO. 1:10CV193
                                      (Judge Keeley)

SUGAR ROCK, INC., GERALD D.
HALL and TERESA D. HALL,

        Defendants.

SUGAR ROCK, INC.,

        Counterclaimant,

v.

CLIFTON G. VALENTINE,

        Counter Defendant.


**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**


Pending before the Court is the plaintiff's Motion to Dismiss Counter-Claim and for Leave to Dismiss Complaint Without Prejudice or, Alternatively, to Stay This Action (dkt. no. 39) and the defendants' Motion for Summary Judgment (dkt. no. 40). For the reasons stated below, the Court **DENIES** the plaintiff's motion to dismiss, **GRANTS** the defendants' motion for summary judgment, and **DISMISSES** this case **WITH PREJUDICE**.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]

### I.

The plaintiff, Clifton G. Valentine ("Valentine"), commenced this action against the defendants, Sugar Rock, Inc., Gerald D. Hall, and Teresa D. Hall (collectively "defendants" or "Sugar Rock"), for an accounting of his partnership interest in four separate mining partnerships located in Richie County, West Virginia, including Cuthright Oil & Gas Co., Iams Gas Co., Iams Oil Co., and Keith Gas Co. (collectively "the Richie County Mining Partnerships"). The plaintiff alleges that he owns fractional working interests in each of these partnerships, which in turn own six oil and gas wells on four separate leaseholds.

Valentine claims to have purchased several 1/32 working interests in the Richie County Mining Partnerships from Frank "F.A." Deem, the original owner of the four leaseholds, in the late 1950s. Since that time, Valentine has received yearly K-1 partnership tax returns. He collected a proportionate share of the profits from the six wells from the late 1950s through 1999, when Frank Deem's son and partial successor in interest, William "W.A." Deem, sold the majority interest in the partnerships to the defendants.

Beginning in 1999, when Sugar Rock took over as operator and managing partner of the Richie County Mining Partnerships, the

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

wells began operating at a net annual loss. The defendants sent Valentine bills for the net production costs of the wells, which he refused to pay. In 2001, Sugar Rock filed suit against Valentine in state court seeking recovery of these costs. The suit was dismissed in 2004 for failure to prosecute.

Valentine filed the instant suit for a partnership accounting on November 8, 2010, arguing that the defendants have failed to account for the proceeds and expenses of production for six oil wells and to remit payments to him in accordance with the net proceeds of production. The defendants dispute that the plaintiff is a partner in the Richie County Mining Partnerships, inasmuch as neither the plaintiff nor the defendants have been able to produce any record of a conveyance or assignment to Valentine of an ownership interest in the wells or leaseholds at issue in this case. In the alternative, the defendants filed a counterclaim seeking reimbursement for Valentine's purported share of production expenses.

**II.**

The Court turns first to the plaintiff's Motion to Dismiss Counter-Claim and for Leave to Dismiss Complaint Without Prejudice or, Alternatively, to Stay This Action. (Dkt. No 39). Valentine argues that this case should be dismissed without prejudice

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

pursuant to Fed. R. Civ. P. 41(a)(2) so he may pursue a class action seeking dissolution of the Richie County Mining Partnerships in state court. He argues that he can only achieve "complete relief" in a state action, which requires the joinder of several non-diverse parties. The defendants oppose this motion and maintain that a voluntary dismissal at this stage of the litigation would result in substantial prejudice to their interests.

**A.**

Where an opposing party has filed an answer or a motion for summary judgment and does not otherwise consent to dismissal, a plaintiff may voluntarily dismiss his case "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Specifically, Rule 41(a)(2) provides, in pertinent part:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Id. The primary purpose of this Rule is to "empower district courts to exercise discretion over voluntary dismissals," GO Computer, Inc. v. Microsoft Corp., 508 F.3d 170, 177 (4th Cir. 2007), and "freely to allow voluntary dismissals unless the parties will be

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

unfairly prejudiced." <u>Davis v. USX Corp.</u>, 819 F.2d 1270, 1273 (4th Cir. 1987) (citation omitted). "In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." <u>Id.</u>

A district court should, as a general rule, grant a motion for voluntary dismissal "absent plain legal prejudice to the defendant." <u>Ellett Bros., Inc. v. U.S. Fidelity & Guar. Co.</u>, 275 F.3d 384, 388 (4th Cir. 2001); <u>see also</u> <u>Andes v. Versant Corp.</u>, 788 F.2d 1033, 1036 (4th Cir. 1986) (prejudice must be "substantial"). If, however, a defendant has pleaded a counterclaim prior to the plaintiff's motion to dismiss, the Court may not dismiss the action over the defendant's objection "unless the counterclaim can remain pending for independent adjudication," Fed. R. Civ. P. 41(a)(2), and the counterclaim itself was "properly filed" such that the Court "properly ha[s] subject matter jurisdiction over the [counter]claim." <u>Gross v. Spies</u>, Nos. 96-2146, 96-2203, 96-2150, 96-2149, 96-2147, 96-2204, 1998 WL 8006, at *5 (4th Cir. Jan. 13, 1998) (citations omitted).[1]

---

[1] The defendants rely upon <u>Gross</u> to argue that the Court is precluded from dismissing the plaintiff's complaint because such action would "necessarily require" the dismissal of its counterclaim. (Dkt. No. 43 at 12). Inasmuch as the Court finds that, in any event, the plaintiff's motion will cause plain legal prejudice to the defendants and should be denied on that basis, it does not address this argument.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

**B.**

Whether a plaintiff is entitled to voluntary dismissal without prejudice, i.e., whether the defendants would not suffer "plain legal prejudice" in the event of dismissal, is traditionally resolved by consideration of the following four factors: "[1] the opposing party's effort and expense in preparing for trial, [2] excessive delay and lack of diligence on the part of the movant, [3] insufficient explanation of the need for a voluntary dismissal, and [4] the present stage of litigation." Miller v. Terramite Corp., 114 F. App'x 536, 540 (4th Cir. 2004)(quoting Phillips USA, Inc., v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir. 1996) (internal quotation marks omitted). These factors are not exclusive, and any other relevant factors should be considered by the district court depending on the circumstances of the case. Gross, 1998 WL 8006, at *5 (citing Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997)).

**1.**

Regarding the first factor, the defendants have expended considerable time, effort, and expense to prepare for the trial of this matter. Valentine filed the instant motion to dismiss more than one year after he initially filed this suit, two weeks after the close of discovery, and exactly one day prior to the summary

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

judgment deadline. The defendants' summary judgment motion and the plaintiff's motion to dismiss were, accordingly, briefed in tandem, and the defendants continued to engage in extensive trial preparations while the motions were pending.

Valentine argues that the defendants will not be prejudiced if this case is dismissed because they can re-use their discovery and re-file their summary judgment motion in the state court action. See, e.g., Davis, 819 F.2d at 1276 (noting parenthetically that "extensive discovery is not prejudicial when the results of discovery may be used in a subsequent action" (citing Tyco Laboratories Inc. v. Koppers Co., 627 F.2d 54, 56 (7th Cir. 1980)). It is important to note, however, that the defendants' contemporaneously filed summary judgment motion bears directly on whether the plaintiff even has a right to file the state court action in the first instance. The imminency of a final and dispositive resolution of the controversy between these parties militates against voluntary dismissal. See Miller, 114 F. App'x at 540 (affirming district court's decision that plaintiff's motion for voluntary dismissal was "untimely and would waste judicial resources" because the motion was after discovery had closed and a dispositive order was imminent); see also Davis, 819 F.2d at 1274 (noting parenthetically that "denial of voluntary dismissal is

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

appropriate where summary judgment is imminent" (citing <u>Pace v. S. Express Agency</u>, 409 F.2d 331, 334 (7th Cir. 1969)).

**2.**

The Court looks next to the excessive delay and lack of diligence by the movant. As already noted above, Valentine did not move to dismiss this case until more than a year after it was first filed and several weeks after discovery had closed. The plaintiff blames the delayed nature of his motion on the defendants' dilatory conduct in the discovery phase of this case. Nevertheless, it appears undisputed that Valentine had all of the information giving rise to his new claims, i.e., K-1s, invoices for operating expenses, and the names of the non-diverse partners he now wishes to join in his state suit, since April 29, 2011. (Dkt. No. 27). The plaintiff's explanation, that he essentially failed to "put it all together" until the deposition of Gerald Hall several weeks before he filed the motion, does not demonstrate the necessary diligence given the information that was in his possession. As the plaintiff delayed more than six months after receiving the relevant discovery to file the instant motion, this factor also weighs against voluntary dismissal.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

**3.**

Regarding the third factor, the Court finds that the plaintiff's explanation for seeking dismissal is insufficient. Although Valentine argues that he needs to be in state court to get "complete relief," it appears more likely that his primary purpose in seeking to re-file this case is to avoid an adverse summary judgment ruling by this Court. Notably, the defendants filed a motion to amend the scheduling order in this case on September 13, 2011, (dkt. no. 31), seeking permission to file an early dispositive motion and attaching as an exhibit the same summary judgment motion they later filed in this case. Although the Court denied the motion to file out of time during a hearing held on October 7, 2011, the plaintiff was nonetheless made aware of the defendant's arguments and, by virtue of the hearing, the Court's concerns regarding the merits of his claims.

"While <u>Davis</u> does indeed direct district courts to 'focus primarily' on the interests of defendants, [<u>Davis</u>, 819 F.2d at 1273], it never suggests limiting 41(a)(2) to exclude all other considerations — among them, preventing plaintiffs from litigating, losing, and then wiping the slate clean by voluntarily dismissing their action." <u>GO Computer, Inc</u>, 508 F.3d at 177 (citing <u>RMD Concessions, L.L.C. v. Westfield Corp., Inc.</u>, 194 F.R.D. 241, 243

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

(E.D. Va. 2000)). The insufficiency of Valentine's proffered explanation for dismissal thus militates against the dismissal of this action. See Skinner v. First Am. Bank of Va., 64 F.3d 659, 659 (4th Cir. 1995) (denying the plaintiff's request where "the only apparent effect of the amendment on the [plaintiff] would have been to permit them to dismiss their federal claim and thereby avoid an adverse ruling in federal court. We do not believe that this is the type of circumstance in which the grant of leave to amend was required."); St. Clair v. GMC, 10 F. Supp. 2d 523, 531 (M.D.N.C. 1998) (denying voluntary dismissal where the court determined that the movant was attempting to avoid adverse consequences).

**4.**

Finally, the Court looks to the present stage of the litigation and whether a dispositive motion is pending. Although "the mere filing of a motion for summary judgment is not, without more, a basis for refusing to dismiss without prejudice," Fidelity Bank PLC v. N. Fox Shipping N.V. 242 F. App'x 84, 89 (4th Cir. 2007) (quoting Andes, 788 F.2d 1033, 1036 n. 4) (internal quotation marks and alterations omitted), the Fourth Circuit has found on multiple occasions that a district court does not abuse its discretion in denying a motion for voluntary dismissal if the case has advanced to the summary judgment stage and the parties have

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

incurred substantial costs in discovery. <u>See</u>, <u>e.g.</u>, <u>Seligman v. Tenzer</u>, 173 F. App'x 280, 283 (4th Cir. 2006) ("Given the advanced stage of the proceedings, we perceive no error in the district court's decision to deny [the plaintiff's] efforts to prolong the litigation.").[2]

### C.

For the reasons discussed, the Court **FINDS** that a voluntary dismissal of this action would cause the defendants "plain legal prejudice," <u>Ellett Bros., Inc.</u>, 275 F.3d at 388, and therefore **DENIES** the plaintiff's motion to dismiss (dkt. no. 39).

### III.

Having denied the plaintiff's motion for voluntary dismissal, the Court turns next to the defendants' motion for summary judgment (dkt. no. 40).

---

[2] <u>See also</u> <u>Miller</u>, 114 F. App'x at 540; <u>Francis v. Ingles</u>, 1 F. App'x 152, 154 (4th Cir. 2001) (affirming district court's denial of motion to dismiss because the "plaintiff's motion came after a lengthy discovery period and merely one week before the scheduled trial date" and "the motivation for the motion appeared to be to circumvent" a discovery ruling); <u>Skinner</u>, 64 F.3d at 659 ("[t]he expenses of discovery and preparation of a motion for summary judgment may constitute prejudice sufficient to support denial of a voluntary dismissal" (citing <u>Andes</u>, 788 F.2d at 1036-37)); <u>Sullivan v. Westinghouse Elec. Corp.</u>, Nos. 87-3576, 87-3577, 1988 WL 54059, at *2 (4th Cir. May 19, 1988) ("Given the advanced stage of the proceedings, the district court's denial of [the plaintiff's] motion was not an abuse of discretion."); <u>Paturzo v. Home Life Ins. Co.</u>, 503 F.2d 333, 335 (4th Cir. 1974) (district court did not abuse its discretion when it denied a motion for voluntary dismissal in light of the advanced stage of litigation).

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]

### A.

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248-52.

**B.**

The defendants argue that Valentine's claims fail as a matter of law because he cannot provide any written documentation of his ownership interests in the properties identified in the complaint, a prerequisite for establishing his membership in the four common law mining partnerships for which he seeks an accounting. In response, Valentine argues that he is not asserting a direct ownership interest in any of the base leases or wells, but is instead seeking remittances pursuant to his ownership interests in the four mining partnerships, which, in turn, own the properties in question.[3] His ownership interests in the actual partnerships, he argues, require no written proof and are thus protected from summary judgment. The defendants reply that, as a matter of law,

---

[3] Valentine limited his arguments on summary judgment to establishing his ownership interest in the four mining partnerships, not the properties themselves. Accordingly, to the extent that he claimed a direct ownership interest in the leaseholds and wells in his complaint, the Court finds that he has waived these arguments. See Ohio Valley Environmental Coalition v. Horinkol, 279 F.Supp.2d 73, 76 n.17 (S.D. W. Va. 2003) ("The plaintiffs' complaint raises additional issues that have not been argued on summary judgment. Claims raised in a complaint but not argued to the court are deemed to be waived." (citing Berry v. Delta Airlines, Inc., 260 F.3d 803, 810 (7th Cir. 2001)).

any such "indirect" property interests necessarily fail to establish him as a mining partner.

On summary judgment, "[t]he question as to what constitute[s] a partnership is a matter of law for the Court." <u>Pruitt v. Fetty</u>, 134 S.E.2d 713, 716 (W. Va. 1964). Critically, in both the briefing and at oral argument, the parties have agreed that the four partnerships in question in this case, the Cuthright Oil and Gas Co., the Iams Gas Co., the Iams Oil Co., and the Keith Gas Co., are properly classified as "mining partnerships" under the common law of West Virginia. As framed by the parties, then, the legal issue before the Court is a relatively narrow one: Whether, under West Virginia law, a party can be a partner in a common law "mining partnership" without possessing a direct ownership interest in the partnership property.

**1.**

Mining partnerships, which "exist in all mining communities," are "distinc[t] associations, with different rights and liabilities attaching to their members from those attaching to members of ordinary partnerships." <u>Kahn v. Central Smelting Co.</u>, 102 U.S. 641, 645 (1880); <u>see also</u> <u>Childers v. Neely</u>, 34 S.E. 828, 829 (W. Va. 1899). In West Virginia, mining partnerships arise where, absent any special agreement, "co-owners or joint owners of a mining

14

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

lease," who are otherwise simply tenants in common or joint tenants, actually "unite and co-operate in working the lease," syl. Pt. 1, <u>Mfrs. Light & Heat Co. v. Tenant</u>, 139 S.E. 706 (W. Va. 1927), and "divide the profits in proportion to their several interests." <u>Drake v. O'Brien</u>, 130 S.E. 276, 280 (W. Va. 1925); <u>see also</u> Syl. Pt. 1, <u>Wetzel v. Jones</u>, 84 S.E. 951 (W. Va. 1914).

In general terms, the three essential elements of a mining partnership are (1) co-ownership of the property interest, e.g., "mines or oil leases or lands"; (2) joint operation of the property interest; and (3) sharing of "profit and loss." <u>Childers</u>, 34 S.E. at 829; <u>see</u> <u>id.</u> ("The presumption in such case would be that of a mining partnership, rather than an ordinary one, in absence of an express agreement forming an ordinary general partnership."); <u>see also</u> <u>Blocker Exploration Co. v. Frontier Exploration, Inc.</u>, 740 P.2d 983, 985 (Colo. 1987) ("This [three-part] mining partnership test has been adopted in the jurisdictions which have addressed this issue.") (collecting cases).[4] Each of these three elements

---

[4] Commentaries discussing mining partnerships have also consistently adopted this three-part test. <u>See</u>, <u>e.g.</u>, Frank Erisman & Elizabeth Jennings Dalton, <u>Multi-Party Ownership of Minerals - Real Property Consequences of Joint Mineral Development</u>, 25 R. Mt. Min. L. Inst. 7 (1979) ("There are the three essential elements of a non-statutory mining partnership: (a) present co-ownership of the mineral interest; (b) joint operation of the property; (c) and an express or implied agreement to share in the profits and losses of the mining operation."; <u>see also</u> Howard L. Boigon & Christine L. Murphy, <u>Liabilities of Nonoperating</u>

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

must be present in order to sustain a finding of a mining partnership. <u>See generally</u> <u>Drake</u>, 130 S.E. at 280; <u>see also</u> Frank Erisman & Elizabeth Jennings Dalton, <u>Multi-Party Ownership of Minerals – Real Property Consequences of Joint Mineral Development</u>, 25 R. Mt. Min. L. Inst. 7 (1979) ("The absence of any one of the elements will apparently negate the existence of a mining partnership."); 4 W. Summers, <u>The Law of Oil and Gas</u> § 722 (1962).

One of the primary distinctive features of a mining partnership is the lack of delectus personae,[5] or choice of partner. <u>Blackmarr v. Williamson</u>, 50 S.E. 254, 256 (W. Va. 1905). Unlike ordinary partnerships, "the mining partnership will continue with respect to the property subject to it regardless of change in ownership of the underlying mineral interests by assignment, death, operation of law or otherwise." Howard L. Boigon & Christine L. Murphy, <u>Liabilities of Nonoperating Mineral Interest Owners</u>, 51 U. Colo. L. Rev. 153, 157 (1980); <u>see also</u> <u>Blackmarr</u>, 50 S.E. at 256. For this reason, authority of a mining partner to bind the others

─────────────

<u>Mineral Interest Owners</u>, 51 U. Colo. L. Rev. 153 (1980) ("a finding of mining partnership will ordinarily be sustained . . . with respect to any mineral enterprise found to have characteristics of joint ownership, joint operation, and the sharing of profits and losses.").

[5] <u>See</u> <u>Black's Law Dictionary</u> 459 (8th ed. 2004) (stating that delectus personae is "[b]ased on the principle, [that] a partner has the right to accept or reject a candidate proposed as a new partner.").

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

to pecuniary liability is more limited than that ordinarily possessed by a general partner. <u>Childers</u>, 34 S.E. at 829 ("[Mining partners] can only bind the partnership for such things as are necessary in the transaction of the particular business, and are usual in such business." (citation omitted)).

The Supreme Court of Appeals of West Virginia has noted that the "difference between an ordinary partnership and a mining partnership" is that an ordinary partnership "result[s] from the intent of the parties," while a mining partnership results from "the fact of the co-tenants undertaking to operate their lease or property." <u>Mfrs. Light & Heat Co.</u>, 139 S.E. at 707. As a general principle, "[a] mining partnership is governed by all the rules applicable to ordinary partnerships, except such as flow from this fundamental difference in the two associations." <u>Id.</u> (internal quotation marks and citation omitted). In other words, "mining partnerships are governed by the law of ordinary partnerships except so far as general usage or the practice of a particular company has established a different rule." <u>Bartlett & Stancliff v. Boyles</u>, 66 S.E. 474, 476 (W. Va. 1909) (internal quotation marks and citations omitted).

The law governing West Virginia's ordinary partnerships is codified in the Revised Uniform Partnership Act ("RUPA"), W. Va.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

Code § 47B-1-1, <u>et. seq.</u> Accordingly, RUPA provides an appropriate general framework for analyzing mining partnerships, except insofar as the elements and structure of these organizations are "fundamental[ly] differen[t]" from ordinary partnerships. <u>Mfrs. Light & Heat Co.</u>, 139 S.E. at 707.[6]

**2.**

Here, Valentine relies exclusively upon various provisions of UPA to argue that, despite his admitted lack of a direct ownership interest in the relevant partnership property, he is a partner in the four mining partnerships. This argument ignores the fact that co-ownership of property is one of the primary, if not <u>the</u> primary, "fundamental difference[s]" distinguishing mining from ordinary partnerships. <u>Mfrs. Light & Heat Co.</u>, 139 S.E. at 707. As the Supreme Court of Appeals of West Virginia succinctly stated in <u>Drake</u>, "[o]wnership of shares and interests in the mine is an <u>essential element</u> of a mining partnership." 130 S.E. at 280

---

[6] Although there is no reported West Virginia decision expressly applying either the 1953 Uniform Partnership Act ("UPA"), W. Va. Code § 47-8A-1 <u>et seq.</u> (repealed), or the 1995 RUPA, W. Va. Code 47B-1-1, <u>et. seq.</u>, to mining partnerships, the Court is satisfied that, inasmuch as these statutes reflect the "rules applicable to ordinary partnerships," they are at least relevant where they do not otherwise conflict with the common law of mining partnerships. <u>Mfrs. Light & Heat Co.</u>, 139 S.E. at 707; <u>see also</u> Official Comment to RUPA § 202(2) ("It is not intended that RUPA change any common law rules concerning special types of associations, such as mining partnerships, which in some jurisdictions are not governed by the UPA.").

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

(emphasis added); see also Blackmarr, 50 S.E. at 256 (same). Quite simply, the plaintiff cannot utilize RUPA to eliminate one of the three bedrock requirements for the existence of mining partnerships under West Virginia law.

Indeed, all pertinent authority in this state requires that the mining partners own a share or interest in the property that is the subject of the partnership. See, e.g., Mfrs. Light & Heat Co., 139 S.E. at 707 (describing mining partnership between "co-owners or joint owners of a mining lease" and "tenants in common and joint tenants"); Syl. Pt. 1, Drake, 130 S.E. 276 ("tenants in common of a mine"); Syl. Pt. 1, Wetzel, 84 S. E. 951 (W. Va. 1914) ("joint owners of an oil lease"); Syl. Pt. 1, Kirchner v. Smith, 58 S.E. 614 (W. Va. 1907) ("two or more owners of a mine" and "two or more holding interests in a lease of mining property"); Childers, 34 S.E. at 829 ("tenants in common of mines or oil leases or lands").[7] In the absence of any argument that Valentine has such an interest in the properties at issue, he fails to meet the requirements of a

---

[7] Treatises on the subject also uniformly find that "[c]oncurrent, present co-ownership of a mineral interest is a necessary, although not sufficient, condition to the existence of a mining partnership." Boigon & Murphy, Liabilities of Nonoperating Mineral Interest Owners, 51 U. Colo. L. Rev. 153, 157 (1980); see also Williams & Myers, Oil and Gas Law § 435 ("some form of concurrent ownership appears everywhere requisite to the finding of a mining partnership").

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

partner in a common law mining partnership under West Virginia law.

The only case the plaintiff has cited to refute this principle, Lantz v. Tumlin, 81 S.E. 820 (W. Va. 1914), is not to the contrary.[8] There, two parties "enter[ed] into [a] partnership agreement" and, "in accordance therewith," one partner purchased a piece of property in his individual name because the other partner "preferred not to be known." Id. at 820. When the partner who had placed his name on the deed denied the existence of the partnership, the court nevertheless determined that a partnership was formed and permitted the partners to settle and wind up the mining partnership's affairs. Id. at 821. Subsequent courts have cited to Lantz for the proposition that oral trusts in property are enforceable in equity. See, e.g., Carter v. Carter, 148 S.E. 378, 379 (W. Va. 1929) ("[o]ral trusts, such as this one, are not within our statute of frauds and will be enforced in equity." (citing Lantz, 81 S.E. 821)).

---

[8] The Court notes that the plaintiff neither substantively briefed nor presented any argument relying upon this case until after the Court had orally granted summary judgment to the defendant. At the hearing, the plaintiff characterized this argument as a "motion for reconsideration," although judgment had not yet been entered. The Court denied the motion. See generally Exxon Shipping Co. v. Baker, 554 U.S. 471 (2008) (Rule 59(e) motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]

The plaintiff points the Court to <u>Lantz</u> in support of his argument that he had an oral partnership agreement with the defendants that is not subject to the strictures of the statute of frauds. The Court does not disagree with this position – there is, manifestly, no dispute that a written partnership agreement is not required for individuals to form a common law mining partnership. <u>See</u> <u>Childers</u>, 34 S.E. at 829 ("[m]ere co-working makes them [mining] partners, without special contract"). What is required, however, is an interest in property, an interest which the plaintiff does not purport to have.[9] Nothing in <u>Lantz</u> refutes this general principle; indeed, more than ten years after that decision, the West Virginia Supreme Court of Appeals held that "[o]wnership of shares and interests in the mine is an essential element of a mining partnership." <u>Drake</u>, 130 S.E. at 280.

### C.

For the reasons discussed, the Court concluded, as a matter of law, that a common law mining partnership requires a plaintiff to

---

[9] To the extent that <u>Lantz</u> may stand for the proposition that a mining partner may establish his ownership interest in property via an "oral trust" as opposed to a writing in satisfaction of W. Va. Code § 36-1-1, the Court simply notes that the plaintiff has made no such argument in this case.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS [DKT. NO.39] AND GRANTING MOTION FOR SUMMARY JUDGMENT [DKT. NO. 40]**

have a direct ownership interest in the partnership property and **GRANTS** the defendant's motion for summary judgment. (Dkt. No. 40).

Accordingly, it:

1) **DENIES** the plaintiff's Motion to Dismiss Counter-Claim and for Leave to Dismiss Complaint Without Prejudice or, Alternatively, to Stay This Action (dkt. no. 39);

2) **GRANTS** the defendants' Motion for Summary Judgment (dkt. no. 40);

3) **GRANTS** the plaintiff's unopposed Motion for Leave to File Instanter Plaintiff's Memorandum in Opposition to Summary Judgment (dkt. no. 48); and

4) **ORDERS** that this case be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the docket of this Court.

It is so **ORDERED**.

Pursuant to Fed. R. Civ. P. 58, the Court **DIRECTS** the Clerk of Court to enter a separate judgment order and to transmit copies of both orders to counsel of record

DATED: September 18, 2012

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE